**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

In re:

CHEBOYGAN LUMBER COMPANY

            Chapter 11
            Case No. 14-20232
            Hon. Daniel S. Opperman

   Debtor.

_____/

**DEBTOR'S FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT**

**I. INTRODUCTION**

NOW COMES the Debtor in the above-captioned matter (the "Debtor"), by and through its counsel, LAMBERT LESER who proposes the following First Amended Combined Plan of Reorganization and Disclosure Statement (the "Plan") in accordance with 11 U.S.C. §1121(a).

This case was filed as a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 6, 2014. The Debtor is authorized to continue to operate its business and manage its property as a Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

This Plan is a liquidating plan. As detailed herein, the majority of the Debtor's assets have already been sold through a process approved by the Court. The distribution projections and other information in this Plan are estimates only, and the timing and amount of actual distributions to allowed claim holders may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or

{00257778}1

recovery projections may or may not turn out to be accurate. Claims holders may not rely on this Plan for, and this Plan does not provide, any legal, financial, regulatory, tax, or business advice. The Debtor urges each claim holder to consult with its own advisors with respect to any such legal, financial, regulatory, tax, or business advice in reviewing this Plan.

## II. DEFINITIONS

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings set forth herein. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules.

1. "**Administrative Claim**" means a claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the applicable Petition Date, professional fees, all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, and all allowed claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2. "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable in this Chapter 11 case.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Michigan, Northern Division, or such other court as may have jurisdiction over this Chapter 11 case.

4. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to this Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to this Chapter 11 case or proceedings therein, as the case may be.

5. "**Bar Date**" means the deadlines established by the Bankruptcy Court for filing proofs of claim in the Chapter 11 case, as the context may require.

6. "**Confirmation Date**" means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

7. "**Confirmation Hearing**" means the hearing before the Bankruptcy Court, held under Section 1128 of the Bankruptcy Code, to consider confirmation of this Plan and related matters, as such hearing may be adjourned or continued from time to time.

8. "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under Section 1129 of the Bankruptcy Code.

{00257778}3

9. "**Debtor**" means the Debtor identified in the caption of this case.

10. "**Effective Date**" means the date 14 days after entry of the Confirmation Order upon which the Confirmation Order becomes a final order.

11. "**Estate**" means the bankruptcy estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

12. "**Petition Date**" means February 6, 2014, the date that the Debtor filed its petition for reorganization relief in the Bankruptcy Court.

13. "**Plan**" means this First Amended Combined Plan and Disclosure Statement as herein proposed by the Debtor including any Plan Supplement(s), all exhibits, and schedules thereto, either in its or their present form or as the same may be further altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

14. "**Plan Supplement**" means any supplement to the Plan containing certain documents and forms of documents specified in this Plan.

15. "**Reorganized Debtor**" means the Debtor as reorganized after the Confirmation Date pursuant to the provisions of this Plan.

16. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 case by the Debtor, as such schedules or statements have been or may be further modified, amended, or

supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

## III. DEBTOR'S PLAN OF REORGANIZATION

### A.    Classification of Claims and Interests

Class 1     Administrative claims, asserted against the Estate, as the same are filed, allowed, and ordered paid by the Court.

Class 2     Secured Claim of Citizens National Bank of Cheboygan

Class 3     Priority Unsecured Claim of the Cheboygan Lumber 401k Retirement Plan

Class 4     Priority Unsecured Claims of the Internal Revenue Service

Class 5     Priority Unsecured Claim of the State of Michigan, Department of Treasury

Class 6     General Unsecured Claims asserted against the Estate by non-insiders

Class 7     General Unsecured Claims asserted against the Estate by insiders

Class 8     The Ownership Interests in the Debtor Corporation


### B.    Treatment of Classes under the Plan

1.    Class 1 – Administrative Claims

   a.    Treatment:  The administrative claims asserted against the Estate shall be paid in full on the Confirmation Date or as otherwise agreed between the Debtor and the holder of each administrative claim, or as set forth specifically herein.  This class will include the professional fees of the Debtor, including attorney fees, and accounting and financial

{00257778}5

consultant fees incurred after the Petition Date, and other professional fees.

These administrative claims include, but are not limited to the following items:

- Contributions to the Debtor 401(k) plan: Certain employee accounts with the 401(k) plan had already been closed and there remains a balance of approximately $300 owed to these employees. The Debtor is working on paying this amount through the proper channels to the employees' new 401(k) or IRA account.State of Michigan Sale and Use Tax: The total administrative expense period owed is $3,855.27. This amount will be paid from the Debtor's available cash on or before the Confirmation Date.
- State of Michigan Unemployment: The total administrative expense period owed is still being determined. This amount will be paid from the Debtor's available cash on or before the Confirmation Date.

If the Debtor's available cash on the Confirmation Date is insufficient to cover the administrative expenses as set forth in this Class, the Debtor's insiders Roy and William Schryer have agreed to contribute the necessary difference from their own assets.

A Order allowing the fees and costs of Debtor's counsel was

{00257778}6

entered on November 23, 2014. A second and final fee application will be submitted after confirmation seeking approval of the remaining attorney fees in this proceeding.

b. Projected recovery under the Plan: 100% of valid claims

c. Voting: This class is unimpaired under the Plan and deemed to have accepted the Plan under Bankruptcy Code section 1126(f). Therefore this class is not entitled to vote on the Plan.

2. Class 2 - Secured Claim of Citizens National Bank of Cheboygan.

a. Treatment: Citizens National Bank of Cheboygan (the "Bank") has filed a claim in the amount of $2,110,092.48. However, substantially all of the Debtor's assets were sold pursuant to a sales process approved by the Court. The net proceeds of the sale in the amount of $844,270.17 was paid to the Bank. In addition, the Bank received $21,531.59 from the sale of excess inventory which was not included in the sale of substantially all of the assets. The Bank retains a lien on all assets of the company. The settlement between the Bank and the Debtor provides that upon the payment to the Bank of a total of $1,300,000.00 the Bank will release its liens on all of the Debtor's assets and withdraw its claims against the Debtor. This amount will be paid from the Debtor's related entities and the proceeds of litigation filed post-petition.

Further, there is an additional parcel of land owned by the Debtor over which the Bank holds the first priority lein. The property is 1.14 acres on Golf Drive in Cheboygan, MI and is presently listed for sale at $19,900.00.

{00257778}7

This Plan proposes that the sale of the property be completed upon the identification of a purchaser and that such sale be free and clear of liens. The proceeds from the sale of the property will be paid according to the priority established in the Code and this Plan.

Further, the Debtor still owns five vehicles over which the Bank has liens. The total value of the vehicles is approximately $26,450.00. As part of this Plan the Debtor proposes that the vehicles will be sold with the proceeds to be paid to the Bank. In the alternative the vehicles will be surrendered to the Bank for a pre-agreed credit against the amount owed to the Bank.

    b. Projected Recovery: unknown

    c. Voting: The Bank is impaired and therefore entitled to vote on the Plan.

3. Class 3 – Priority Unsecured Claim of the Cheboygan Lumber 401(k) Plan

    a. Treatment: As of the petition date, the Debtor owed $13,527.84 in contributions to the Debtor's 401(k) plan. This claim will be paid by the Debtor in deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim. Specifically the Debtor will pay this class in 12 equal monthly installments, the first to begin on June 30, 2015, including interest at the prime rate of interest as published by the Wall Street Journal as of the Confirmation Date.

    b. Projected Recovery: 100%

    c. Voting: This class is impaired and entitled to vote under the plan.

4. Class 4 – Priority Unsecured Claims of the Internal Revenue Service

   a. Treatment: The Internal Revenue Service has filed two proofs of claim which include pre-petition unsecured priority claims which total $947.94. These claims will be paid by the Debtor in deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim. Specifically the Debtor will pay this class in five yearly installments, the first to be made one the one year anniversary of the Order for Relief. The first four payments will be interest only at the prime rate of interest as published by the Wall Street Journal as of the Confirmation Date with the final payment to be balloon payment of the total balance remaining.

   b. Projected Recovery: 100%

   c. Voting: This class is impaired and entitled to vote under the plan.

5. Class 5 – Priority Unsecured Claim of the State of Michigan Department of Treasury

   a. Treatment: The Michigan Department of Treasury has filed a priority unsecured claim in the amount of $95,313.21. This claim includes several entries which were estimated by Treasury and do not reflect the actual balances owed by the Debtor. The Debtor will work with Treasury to resolve the discrepancy and pay any agreed balance remaining due after this process. In the event the Debtor and Treasury cannot agree, the Debtor shall object to this claim. The Debtor has also

{00257778}9

included in this class the secured claim filed by the Michigan Department of Treasury in the amount of $178,658.02. The lien of the State was of lower priority than that of the Bank, which was undersecured, the State's lien was therefore extinguished upon the sale of substantially all the Debtor's assets free and clear of liens. This class will be paid by the Debtor in deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim. Specifically the Debtor will pay this class in five yearly installments, the first to be made one the one year anniversary of the Order for Relief. The first four payments will be interest only at the prime rate of interest as published by the Wall Street Journal as of the Confirmation Date with the final payment to be balloon payment of the total balance remaining. The penalty portion of this claim, in the amount of $10,961.18 will be paid in Class 6.

   b. Projected Recovery: 100%

   c. Voting: This class is impaired and entitled to vote under the plan.

6. Class 6 – General Unsecured Claims Asserted Against the Estate by Non-Insiders

   a. Treatment: All claims filed or scheduled by the Debtor as non-priority general unsecured claims, and which are not held by insiders as defined by the Code will be paid a pro rata share of any funds which remain after the claims in the preceding classes are paid in full. In addition, any funds, after deduction for necessary fees and costs, from

{00257778}10

the recoveries identified as BCBS Reimbursement, the Gorges Litigation, preference litigation, and the Rivertown Contribution in Section VI.B. of this Plan will be paid on a pro-rata basis to the creditors in this class.

 b. Projected Recovery: Unknown.

 c. Voting: This class is impaired and entitled to vote under the plan.

7. <u>Class 7 – General Unsecured Claims Asserted Against the Estate by Insiders</u>

 a. Treatment: All claims filed or scheduled by the Debtor as non-priority general unsecured claims, and which are held by insiders as defined by the Code will be paid a pro rata share of any funds which remain after the claims in the preceding classes are paid in full.

 b. Projected Recovery: Unknown.

 c. Voting: This class is impaired and entitled to vote under the plan.

8. <u>Class 8 – Ownership Interests in Debtor Corporation</u>

 a. Treatment: The current owners of the Debtor corporation shall receive nothing on account of their ownership interests.

 b. Voting: This class is unimpaired and is therefore not entitled to vote under the plan.

**C. Impaired Classes under the Plan**

Under Section 1126(c) of the Bankruptcy Code, and except as otherwise provided in Section 1126(e) of the Bankruptcy Code, an impaired class of claims has accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in such class actually voting have voted to

{00257778}11

accept the Plan.

**D.    Payment of U.S. Trustee's Fees**

Immediately upon Confirmation of this Plan, the Debtor will pay all fees due and owing to the U.S. Trustee's Office which have been incurred up to that date, but have not been paid. The Debtor shall serve upon the U.S. Trustee post-confirmation receipt and disbursement reports on a monthly basis, until such time as the case is closed with the Court. The Debtor shall continue to pay quarterly fees to the U.S. Trustee on a timely basis until such time as the case is closed with the Court.

**E.    Executory Contract and Unexpired Lease Assumption and Rejection**

1.    Assumption and Rejection

All executory contracts and unexpired leases as to which the Debtor is a party shall be deemed automatically rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code as of the Confirmation Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections contemplated hereby pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Confirmation Date. The Debtor reserves the right to file a motion on or before the Confirmation Date to assume or reject any specific executory contract or unexpired lease.

2.    Claims Based on Executory Contract or Unexpired Lease Rejection

If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a claim, then such claim shall be forever barred and shall not be enforceable against the Debtor, or their property unless a proof of claim is filed with the Court within thirty (30) days after the later of

{00257778}12

(a) the Confirmation Date or (b) notice that the executory contract or unexpired lease has been rejected, unless otherwise ordered by the Bankruptcy Court. Any proofs of claim arising from the rejection of the Debtor's executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable. All allowed claims arising from the rejection of unexpired leases and executory contracts shall be classified as general unsecured claims and shall be treated in accordance treatment provided for such classes under the Plan.

3.      Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan nor anything contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an executory contract or unexpired lease or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a final order resolving such dispute to alter their treatment of such contract or lease.

F.      **Collective Bargaining Agreements**

There are no collective bargaining agreements to be assumed or rejected.

G.      **Supplements to the Plan**

Prior to confirmation the Debtor may file amendments and/or supplements to this Plan which shall be incorporated by reference into this Plan or such amended Plan as the Debtor may file and shall be binding on all creditors and interested parties.

## IV. DESCRIPTION OF DEBTOR AND CAUSES OF BANKRUPTCY

The Debtor operated a retail building supply and hardware business in Cheboygan, Michigan. The Debtor is a Michigan Corporation owned by the following shareholders:

- Debra K. Schryer Trust - 18%

- Diane L. Schryer Trust - 10.66%

- Jason M. Schryer - 22%

- Tara J. Ecker - 24%

- Todd A. Schryer - 24%

- Roy A. Schryer Trust - .67%

- William M. Schryer Trust - .67%

During this down turn in the housing industry, the Debtor took steps to try to stay ahead of the downward pressure that the loss of sales put on profits and cash flow. In 1995 the Debtor and its related entities were five stores strong and doing sales of $12,523,000. They steadily grew sales to $17,422,000 in 2002 and then in 2003 they opened their sixth store in the Rogers City market and sales hit a high of $21,532,000 in 2005. New housing starts nationally were in the 2200 range on an annual basis in 2006. Capital investments were put into each of their facilities each year to improve their position in the market. After 2006, the market started to turn downward. Michigan was hit first with the downturn and shake up of the auto industry

In 2008 the national economy and especially the housing industry started a major decline that affected every lumber and building material dealer in the industry. Housing starts on a national basis were reduced to 490 during the year 2009. Sales for the Debtor operations were $12,882,000 in 2009 and as the downward trend continued in the

{00257778}14

industry, sales went to $5,512,000 in 2013.

The Debtor took steps to protect its cashflow in this period including significant costs cuts across the board, new refinancing program with banks, plan to improve margins, and a location analysis of each store for possible closure. In March 2013, the Debtor hired a financial consultant in a consulting engagement to facilitate working capital for day to day operations and the growth of sales

However, the Debtor was not able to stay ahead of the down turn pressure that decreasing sales revenue put on the bottom line. It could not keep inventory at the adequate levels to maintain good customer service and sales continued to decrease. As a result the Debtor was unable to make its payments to creditors and was forced to file its Chapter 11 petition.

## V.     POST-PETITION EVENTS OF SIGNIFICANCE

The following contains an overview of certain events occurring after the Chapter 11 filings.

### A.     Filing the Chapter 11 Case Petitions

This case was filed as a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 6, 2014. The Debtor is authorized to continue to operate its business and manage its property as a Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

### B.     Business Continuation; Litigation Stay

The Debtor's chapter 11 filing immediately gave rise to the Bankruptcy Code's

{00257778}15

"automatic stay" which, with limited exceptions, enjoined commencement and continuation of all creditor collection efforts, litigation against the Debtor, and enforcement of liens against the Debtor's property. This relief provided the Debtor with "breathing room" to assess and reorganize its business. The automatic stay remains in effect, unless modified by the Bankruptcy Court, until the Confirmation Date.

**C.      Post-Petition Sales Outside the Ordinary Course of Business**

The 363 Sale of substantially all the Debtor's assets was approved by the Court as detailed in the treatment of Class 2 claims above.  There remains no inventory, accounts receivable or tangible assets after the sale.

**D.      Cash Collateral Orders/Adequate Protection Orders**

Until the Debtor voluntarily ceased operations, the Debtor and the Bank were able to agree to consensual use of cash collateral and provision of adequate protection under orders entered by this Court.

**E.      Litigation**

There has been no significant post-petition litigation in this matter.  However, the Debtor does anticipate the initiation of certain litigation as described in the following section of the Plan.

**F. Principals of the Debtor**

As this is a liquidating plan, there will be no prospective operations by the Debtor and there will thus be no principals responsible for its operations.

**VI. LIQUIDATION ANALYSIS, ASSETS, LIABILITIES AND CLAIMS**

**A.      Liquidation Analysis**

As this is a liquidating plan and as creditors are being paid in the order and priority

{00257778}16

as they would be in a Chapter 7 proceeding, no liquidation analysis is necessary.

**B.      Potential Claims and Causes of Action Including Preference and Fraudulent Conveyance Actions, Intercompany Payables**

The Debtor has not conducted a preference analysis, fraudulent conveyance analysis, or analysis with respect to other avoidance actions or claims objections. Any creditor who received a payment from the Debtor within 90 days prior to the respective Petition Date may be named as a defendant in a preference action. The Debtor specifically reserves all rights to pursue any and all claims, causes of actions, avoidance actions, objections to claims, fraudulent conveyance actions or any other type of action, as well as any pending causes of action set out in Section V(E) above.

Further, the Debtor intends to seek reimbursement from Blue Cross Blue Shield of the claims incurred prior to the time the Debtor's policy was cancelled post-petition (the "BCBS Reimbursement").

In addition, the Reorganized Debtor will be initiating a lawsuit against its former financial advisor, Richard Gorges and Associates, and Richard Gorges individually for return of the funds paid to him before and (if applicable) during the course of the bankruptcy proceeding and other damages (the "Gorges Litigation").

Finally, on account of certain post-petition transfers of inventory between the Debtor and related entity Rivertown Do-It Center ("Rivertown"), the Debtor is owed a net $1,330.64 from Rivertown. Rivertown has agreed to pay this amount (the "Rivertown Contribution") at the rate of $100.00 per month until paid in full.

{00257778}17

## C.    Procedures for Resolving Disputed Claims

### 1.    Claims Administration

The Debtor shall be responsible for and shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all claims against, and interests in, the Debtor and making distributions (if any) with respect to all claims and interests.

### 2.    Filing of Objections

Unless otherwise provided in the Plan or extended by the Bankruptcy Court, any objections to claims and/or interests shall be served and filed on or before the date which is ninety (90) days after the Confirmation Date (the "Claims Objection Deadline"). Notwithstanding any authority to the contrary, an objection to a claim or interest shall be deemed properly served on the holder of the claim or interest if the Debtor effects service in any of the following manners: (i) in accordance with Bankruptcy Rule 3007, (ii) to the extent counsel for a holder of a claim or interest is unknown, by first-class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or any attachment thereto (or at the last known addresses of such holders of claims if no proof of claim is filed or if the Debtor has been notified in writing of a change of address), or (iii) by first-class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of the claim or interest in the Chapter 11 cases and has not withdrawn such appearance.

### 3.    Claim Dispute Resolution Procedures

Resolution of disputes regarding claims shall be subject to the following parameters:

- If the settlement amount for a disputed claim is less than $2,000.00, the Debtor shall

be authorized to settle such claim or interest without the need for further Bankruptcy Court approval or further notice.

- If the settlement amount for a disputed claim is greater than or equal to $2,000 the Debtor, shall file a proposed settlement stipulation with the Bankruptcy Court with notice and hearing consistent with the Local Rules and the Bankruptcy Rules.

4.    Claims Bar Date

Except as provided in the Plan or otherwise agreed, any and all claims for which a proof of claim was filed after the applicable bar date shall be disallowed, expunged and forever barred as of the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such claims may not receive any distributions on account of such claims, unless on or before the Confirmation Date such late claims have been deemed timely filed by a final order.

5.    Amendments to Claims

On or after the Confirmation Date, except as provided herein, a claim may not be filed or amended without the prior authorization of the Bankruptcy Court, or Debtor. To the extent any such claim is filed without such authorization, such claim shall be deemed to be a disallowed claim and expunged without any further notice to or action, order, or approval of the Bankruptcy Court or any other person.

{00257778}19

## VII.  EXECUTION AND IMPLEMENTATION OF PLAN

**A.      Financial Projections**

As this is a liquidating plan, no financial projections are necessary.

**B.      Continuation of Business**

The Debtor has ceased operations and sold substantially all of its assets.

**C.      Tax Ramifications**

The Debtor does not contemplate any significant tax ramifications from the implementation of the Plan.

**D.      Claim Discharge and Interest Termination**

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, confirmation of the Plan and the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date, of all claims and causes of action, whether known or unknown, against, liabilities of, obligations of, rights against, and interests in the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such claims, rights, and interests, including, but not limited to, claims and interests that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such claims relate to services performed by employees of the Debtor prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Confirmation Date, all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim based upon such

claim, debt, right, or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a claim or interest based upon such claim, debt, right, or interest is allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such a claim, right, or interest accepted the Plan, the Confirmation Order shall be a judicial determination of the discharge of all claims against and interests in the Debtor, subject to the occurrence of the Confirmation Date.

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all persons that have held, currently hold, or may hold claims or interests that have been discharged or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the reorganized Debtor or its property on account of any such discharged claims, debts, liabilities, or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is consistent, with the provisions of the Plan.

## E. Plan Modification, Revocation, or Withdrawal

1.    Plan Modification and Amendment

Except as otherwise provided in the Plan, the Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in

Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in this Plan, the Debtor expressly reserve their rights to revoke or withdraw, or to alter, amend or modify materially the Plan, one or more times, after the Confirmation Date. After the Confirmation Date, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

2. <u>Effect of Confirmation on Plan Modifications</u>

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

3. <u>Plan Revocation or Withdrawal</u>

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any claim or interest or class of claims or interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any claims, interests, or causes of action; (ii) prejudice in any manner the right

of the Debtor or any other person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other person.

**F.     Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Confirmation Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction to:

- Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any claim or interest, including the resolution of any request for payment of any administrative claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of claims or interests;

- Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;

- Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure or claims arising therefrom, including cure or claims pursuant to Section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Confirmation

Date, the list of executory contracts or unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

- Ensure that distributions to holders of allowed claims and interests are accomplished pursuant to the provisions of the Plan;

- Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Confirmation Date;

- Adjudicate, decide, or resolve any and all matters related to any causes of action held by the Debtor as of the Confirmation Date;

- Adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

- Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

- Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- Resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any person's obligations incurred in connection with the Plan;

{00257778}24

- Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation or enforcement of the Plan;

- Resolve any cases, controversies, suits, disputes, or causes of action with respect to the releases, injunctions, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- Resolve any and all cases, controversies, suits, disputes, or causes of action with respect to the repayment or return of distributions and the recovery of additional amounts owed by a holder of a claim for amounts not timely repaid;

- Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

- Adjudicate any and all disputes arising from or relating to payments or distributions under the Plan;

- Consider any and all modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any final order, including the Confirmation Order;

- Hear and determine requests for the payment or distribution on account of claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

- Hear and determine any and all disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation

{00257778}25

Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

- Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code with any tax incurred or alleged to be incurred by the Debtor or Reorganized Debtor as a result of consummation of the Plan being considered to be incurred or alleged to be incurred during the administration of these Chapter 11 Cases for purposes of Section 505(b) of the Bankruptcy Code;

- Hear and determine any and all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Confirmation Date;

- Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

- Enforce any orders previously entered by the Bankruptcy Court;

- Hear any and all other matters not inconsistent with the Bankruptcy Code; and

- Enter an order or Final Decree concluding or closing the Chapter 11 Cases.

## G.    Miscellaneous Provisions

### 1.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all holders of claims or interests (irrespective of whether any such holders of claims or interests did not vote to accept or reject the Plan, voted to accept or reject the Plan, or are deemed to accept or reject the Plan), all persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

### 2.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Michigan, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

### 3.    Plan Provisions Nonseverable

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to

{00257778}27

alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

4.    Effect of Conversion

In the event of conversion of this Case to a case under Chapter 7 of the Bankruptcy Code, all property of the Debtor shall be property of its Chapter 7 estate.

### VIII. STATUTORY REQUIREMENTS FOR PLAN CONFIRMATION

The following is a brief summary of the plan confirmation process in a proceeding under Chapter 11 of the Bankruptcy Code. Claim and interest holders are encouraged to review the Bankruptcy Code's relevant provisions and to consult their own attorneys.

### A.    The Confirmation Hearing

Bankruptcy Code Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on plan confirmation. Under Bankruptcy Code Section 1128(b), any party in interest may object to plan confirmation. The Court in this case will enter an order setting the confirmation hearing date. The Bankruptcy Court may adjourn the confirmation

{00257778}28

hearing from time to time without further notice except by announcing the adjournment date at the confirmation hearing or at any subsequent adjourned confirmation hearing.

**B.  Confirmation Standards**

To confirm the Plan, the Bankruptcy Court must find that, among other things, the requirements of Bankruptcy Code Section 1129 are satisfied. In summary, these requirements include the following:

1. The Plan complies with all applicable Bankruptcy Code provisions.

2. The Debtor has complied with the applicable Bankruptcy Code provisions.

3. The Plan has been proposed in good faith and not by any means forbidden by law.

4. Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the cases, has been disclosed to the Bankruptcy Court, and any such payment made before Plan Confirmation is reasonable, or if such payment is to be fixed after Confirmation, such payment is subject to Bankruptcy Court approval as reasonable.

5. With respect to each class of impaired claims or interests, either each claim or interest holder in such class has accepted the Plan or will receive or retain under the Plan on account of such claim or interest, property of a value, as of the Confirmation Date, not less than the amount such holder would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.

6. Each class of claims or interests entitled to vote on the Plan either has accepted the Plan or is not impaired under the Plan, or the Plan can be confirmed without the approval of each voting class under Bankruptcy Code Section 1129(b).

{00257778}29

7.  Except to the extent a particular claim holder agrees to different treatment, allowed administrative claims and other allowed priority claims will be fully paid on, or as soon as reasonably practical after, the Confirmation Date.

8.  At least one class of impaired claims or interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim or interest in such class.

9.  Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless the liquidation or reorganization is proposed in the Plan.

10. All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Confirmation Date.

11. The Plan addresses payment of retiree benefits in accordance with Bankruptcy Code Section 1114.

The Debtor believe that the Plan satisfies the requirements of Bankruptcy Code Section 1129, including, without limitation, that (i) the Plan satisfies or will satisfy all of the Bankruptcy Code's statutory requirements; (ii) the Debtor have complied or will have complied with all of the Bankruptcy Code's requirements; and (iii) the Debtor proposed the Plan in good faith.

## C.  Best Interests of Creditors Test

Before it can confirm the Plan, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each claim or interest holder in such class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Confirmation Date, not less than the amount that such

Person would receive or retain if the Debtor liquidated under Chapter 7 of the Bankruptcy Code.

In Chapter 7 liquidation cases, unsecured creditors and interest holders are generally paid from available assets in the following order, with no junior class receiving any payments until all amounts due to senior classes have been fully paid or any such payment is provided for:

- Secured creditors (to the extent of their collateral's value);
- Administrative and other priority creditors;
- Unsecured creditors;
- Debt expressly subordinated by its terms or by Bankruptcy Court order; and
- Equity interest holders.

This is a liquidating plan. All of the Debtor's remaining assets and litigation proceeds will be distributed pursuant to the priorities in a Chapter 7 proceeding and as set forth in 11 U.S.C. 507. Further, the insiders are subordinating their claims to those of the general secured creditors, therefore, each non-insider creditor's return, if any, should exceed is what they would receive in a hypothetical Chapter 7 proceeding.

**D.      Financial Feasibility**

Before it can confirm the Plan, the Bankruptcy Court must also find that confirmation is not likely to be followed by the Reorganized Debtor's liquidation or the need for further financial reorganization, unless that liquidation or reorganization iscontemplated by the Plan. The term reorganization can include the orderly liquidation of the Debtor. This Plan contemplates the continuation of the orderly liquidation of the Debtor's assets and the distribution of those assets pursuant to the priorities established

under the Code, except with respect to insider claimants who shall receive nothing until all other claimants are fully paid.

### E.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to plan confirmation that, except as described in the following Section, each class of impaired claims or equity interests accept the plan. A class not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or interest; (b) cures any default and reinstates the original terms of the obligation; or (c) provides that, on the consummation date, the claim or interest holder receives cash equal to the allowed amount of its claim or, with respect to any interest, any fixed liquidation preference to which the interest holder is entitled or any fixed price at which the Debtor may redeem the security.

### F.    Confirmation Without Acceptance by All Impaired Classes

Bankruptcy Code section 1129(b) allows a Bankruptcy Court to confirm a plan, even if all impaired classes entitled to vote on the plan have not accepted it, provided that the plan has been accepted by at least one impaired class. Bankruptcy Code section 1129(b) states that, notwithstanding an impaired class's failure to accept a plan, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests impaired that is impaired under, and has not accepted, the plan.

{00257778}32

Courts will take into account a number of factors in determining whether a plan discriminates unfairly, including the effect of applicable subordination agreements between parties. Accordingly, a plan could treat two unsecured-creditor classes differently without unfairly discriminating against either class.

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (a) the secured claim holders retain the liens securing their claims for the claims' allowed amount, whether the debtor retains the applicable encumbered property or transfer it to another entity under the plan; and (b) each secured claim holder in the class receives deferred cash payments totaling at least the claims' allowed amount with a present value, as of the plan's effective date, at least equivalent to the value of the secured claimant's interest in the applicable encumbered property.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims requires that either: (a) the plan provides that each claim holder in the class receive or retain property valued, as of the plan's effective date of the plan, equal to the claim's allowed amount; or (b) any claim or interest holder junior to the claims of the class will not receive or retain under the plan any property for the junior claim or equity interest

The condition that a plan be "fair and equitable" to a non-accepting class of equity interests requires that either: (a) the plan provides that each interest holder in the class receives or retains under the plan property of a value, as of the plan's effective date, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which the interest holder is entitled, (if) any fixed redemption price to which the interest Holder is

{00257778}33

entitled, or (iii) the interest's value; or (b) if the class does not receive such an amount as required under (a), no class of equity-interests junior to the non-accepting class receives a distribution under the plan.

The Plan provides that if any impaired class rejects the Plan, the Debtor reserve the right to seek to Plan confirmation under Bankruptcy Code Section 1129(b)'s "cram down" provisions. If any impaired class rejects the Plan or is deemed to have rejected the Plan, the Debtor will request Plan confirmation under Bankruptcy Code section 1129(b). The Debtor reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or supplement, including for the purpose of satisfying Bankruptcy Code Section 1129(b)'s requirements, if necessary.

## IX. VOTING INSTRUCTIONS

A.    **Voting procedures**

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

{00257778}34

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.

**B.     Acceptance**

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by

holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

## C.     Confirmation

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

1.     Each class of impaired creditors and interest must accept the plan, as described above.

2.     Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

## D.     Modification

The debtor reserves the right to modify or withdraw the plan at any time before confirmation.

## E.     Effect of confirmation

If the plan is confirmed by the Court:

1.     Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2.     Except as provided in the plan:

{00257778}36

(a)    In the case of a <u>corporation</u> that is reorganizing and continuing business:

    (1)    All claims and interests will be discharged.

    (2)    Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

(b)    In the case of a <u>corporation</u> that is liquidating and not continuing its business:

    (1)    Claims and interests will not be discharged.

    (2)    Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

(c)    In the case of an individual or husband and wife:

    (1)    Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 727(a).

    (2)    Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 727(a).

Respectfully submitted,

LAMBERT LESER

/s/ Susan M. Cook

Dated: March 6, 2015    BY:   _____
SUSAN M. COOK (P31514)
KEITH A. SCHOFNER (P41852)
ADAM D. BRUSKI (P70030)
Counsel for Debtor
916 Washington Ave., Ste. 309
Bay City, MI 48708
Phone: (989) 893-3518
scook@lambertleser.com

{00257778}37

Dated: March 6, 2015          BY:       /s/ Roy A. Schryer

                                                ROY A. SCHRYER
                                                President
                                                  Cheboygan Lumber Company

{00257778}38